# CILENTI & COOPER, PLLC

### ATTORNEYS AT LAW

200 Park Avenue – 17ᵗʰ Floor
New York, New York 10166

Telephone (212) 209-3933
Facsimile (212) 209-7102

October 13, 2021

**BY ECF**

Hon. Robert W. Lehrburger, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:  ***Encarnacion v. 20E Frame Inc., et al.***
> <u>***Case No. 21-CV-2021 (RWL)***</u>

Dear Judge Lehrburger,

We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with defendants' counsel seeking the Court's approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

### I.    *The Need for the Court's Approval of the Agreement*

As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11ᵗʰ Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.,* No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

Hon. Robert W. Lehrburger, U.S.M.J.
October 13, 2021
Page 2

## II.    Plaintiff's Claim for Unpaid Wages

Defendants own and operate a restaurant doing business as "ETC," located at 20 East 46th Street in Manhattan (the "Restaurant").[1] Plaintiff is a former employee of the Restaurant, who was hired by the defendants in or about November 2018 to work as a sushi and soup preparer.[2] Plaintiff's employment ended on or about January 27, 2021. Although his work hours fluctuated slightly each week, plaintiff alleges that, prior to the onset of Covid-19 in March 2020, he typically worked six (6) days per week and his work schedule consisted of ten (10) to eleven (11) hours per day Monday through Friday from 5:30 a.m. until 3:30 or 4:30 p.m.; and five (5) hours on Saturday from 8:00 a.m. until 1:00 p.m. Thus, plaintiff alleges working fifty-five (55) to sixty (60) hours per week.[3]

Upon the Restaurant's re-opening in mid-September 2020 and continuing through the remainder of his employment in January 2021, except for a few weeks, plaintiff's schedule was reduced to forty (40) hours or less.

According to plaintiff, he was paid, in cash, on a salary basis straight time for all hours worked for the majority of his employment. Mr. Encarnacion alleges being paid at the following rates:

- November 2018 – October 2019: $750/week
- November 2019 – mid-March 2020: $800/week
- Mid-September 2020 – January 27, 2021: $15/hour

## III.    The Alleged Facts Contested by Defendants

Plaintiff alleges that the defendants failed to provide him with a wage notice at the time of hire or weekly wage statements upon paying him his wages. To the contrary, the defendants contend that plaintiff received a wage notice in 2018 and 2019 and produced copies of those documents during discovery. According to plaintiff, he was provided with a blank notice at upon hire but denies ever executing the document. A dispute exists as to the legitimacy of the signature on the documents.

With respect to actual wage and hour records, the defendants produced plaintiff's punch clock records, which corroborate plaintiff's contention that he worked well above forty (40) hours each week. In addition to the punch clock records, the defendants produced what appear to be receipts or stubs that purport to show the number of hours plaintiff was entitled to be compensated for, and that he was paid on an hourly basis at the proper minimum wage and overtime rates. To the contrary, it is plaintiff's position that the receipts are not accurate both in

---

[1] Due to the Covid-19 pandemic, the Restaurant was closed between in or about mid-March 2020 through in or about mid-September 2020. Prior thereto, the Restaurant operated 24/7. Since re-opening in mid-September 2020, the restaurant operates from 6:00 a.m. until 3:00 p.m.

[2] As discussed, *infra*, a dispute exists as to whether the defendants provided plaintiff with a written wage notice identifying his regular hourly rate of pay and corresponding overtime rate of pay.

[3] During this period, plaintiff acknowledges receiving a one-hour lunch break Monday through Friday, as well as two (2) meals per day. He did not, however, receive a break or meal on Saturdays.

Hon. Robert W. Lehrburger, U.S.M.J.
October 13, 2021
Page 3

terms of hours worked as well as the method and amount of payment. As stated above, Mr. Encarnacion alleges that he was paid a straight salary for the majority of his employment regardless of the number of hours worked each week, and that he was not actually compensated for all hours worked. It is plaintiff's position that a careful review of the timecards and receipts reveals numerous deficiencies, including that many timecards that show plaintiff is allegedly paid virtually the same as other weeks despite working more or fewer hours, and even being paid less despite working more hours in comparison to other weeks. Moreover, plaintiff believes that the punch cards show that plaintiff was not paid for all hours worked, and no "spread of hours" premium was paid to plaintiff for days in which his shift exceeded ten (10) hours.

Defendants maintain that the requisite pay notices and wage statements were provided to plaintiff. According to the defendants, plaintiff's work hours were maintained by timecards and reflected on the wage statements to provide plaintiff with his hours worked, which included overtime pay. It is the defendants' position that plaintiff's pay varied depending on the actual hours worked and that the statements reflect that fluctuation.

### IV.    Defendants' Financial Condition

One concern tending toward settlement was plaintiff's legitimate concern about the collectability of an unsatisfied judgment against the defendants. *See Cabrera v. Roselea Int's Services*, No. 10 Civ. 241, 2011 U.S. Dist. LEXIS 152268, at *12 (M.D. Fla. Dec. 30, 2011) (compromised settlement deemed reasonable in light of plaintiff's legitimate collectability concerns). There is always risk that a corporate defendant will have no collectable assets for this uninsured claim. This is especially true here as the defendants would likely not be able to withstand a larger settlement or judgment. Defendants operate a small neighborhood restaurant with limited financial resources. Indeed, since on the onset of the COVID-19 pandemic, the defendants currently owe approximately $1.3 million in back rent, and $2 million in loans, all while business income has decreased more than 30%.

The Agreement significantly decreases the risk of collection by requiring the defendants to remit payment of the entire settlement sum within the next two (2) months.

### V.    The Settlement

It is estimated that plaintiff is owed approximately $14,750 in unpaid overtime compensation and "spread of hours" premium, with an equal amount in liquidated damages. Compensatory overtime compensation damages are calculated based on time and one-half of plaintiff's straight time regular hourly rate.[4] Plaintiff's "spread of hours" damages is determined by taking the number of days each week that plaintiff worked more than ten (10) hours and multiplying that figure by the statutory minimum wage in effect at the particular time.

Together with the statutory damages for the defendants' failure to provide wage notices and statements, the total value of plaintiff's claims amount to approximately $39,538, exclusive of attorneys' fees and interest.

---

[4] Plaintiff's regular hourly rate of pay is determined by dividing plaintiff's gross pay by forty (40) hours.

Hon. Robert W. Lehrburger, U.S.M.J.
October 13, 2021
Page 4

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $25,000 to resolve all of plaintiff's wage and hour claims against the defendants.

## VI.    The Agreement is Fair and Reasonable

We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about the value of plaintiff's claims.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.,* 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also In re Penthouse Executive Club Compensation Litig.,* No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions, as well as during mediation before Stephen Fearon, Esq. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

In light of the various disputes concerning plaintiff's claims, as well the risk of ongoing litigation, this settlement should be approved. By settling now, plaintiff receives in excess of his estimated underlying unpaid wages even after attorneys' fees and costs are deducted, while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiff during mediation, he made the decision to accept the defendants' offer. It is respectfully submitted that, in view of the foregoing, this settlement is a reasonable compromise of disputed issues and should therefore be approved.

## VII.    Application for Attorneys' Fees

Pursuant to this firm's retainer agreement with plaintiff, our firm seeks retain one-third of the net proceeds of the settlement after expenses are deducted.[5] Therefore, counsel seeks $8,127.84 in fees, and $614 in costs, for a total fee application of $8,741.84.

Attorneys' fees in FLSA settlements are examined, to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y.

---

[5] The firm's expenses total $614 consisting of the filing fee to commence the action ($400), and service of process ($214).

Hon. Robert W. Lehrburger, U.S.M.J.
October 13, 2021
Page 5

2012). In this case, plaintiffs' counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees. Additionally, as stated above, plaintiff is being made whole even after fees and costs are deducted.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, courts routinely hold that a contingency fee award is presumptively valid where "the proposed fee amount is exactly one-third of the net settlement amount, which is an amount routinely approved under the percentage method" in this District, "particularly where it is pursuant to a previously negotiated retainer agreement." *See Yunjian Lin v. Grand Sichuan 74 St Inc.*, No. 15 Civ. 2950, 2018 U.S. Dist. LEXIS 110266, at *15-16 (S.D.N.Y. July 2, 2018) (citations omitted); *Daniels v. Haddad*, 17 Civ. 8067, 2018 U.S. Dist. LEXIS 212861, at *2-3 (S.D.N.Y. Dec. 17, 2018). Here, plaintiff agreed to a one-third contingency retainer agreement with counsel in connection with his wage-and-hour claims.

For all of the reasons set forth above, the parties respectfully request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal, which is being submitted simultaneously herewith, that expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

Respectfully submitted,

Justin Cilenti

Enclosures

cc:    Jonathan Y. Sue, Esq. (by ECF)